# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| **Kateena Powell,** | Case Number: 8:20-cv-2433 |
| *Plaintiff*, | |
| | Section: |
| v. | |
| | **Ad Damnum:** $2,000.00 + Atty Fees & Costs |
| **Ability Recovery Services, LLC,** | |
| *Defendants*. | **JURY TRIAL DEMANDED** |

## COMPLAINT

COMES NOW the Plaintiff, **Kateena Powell**, ("**Ms. Powell**"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendant, **Ability Recovery Services, LLC** ("**Ability**") and states as follows:

## PRELIMINARY STATEMENT

1. This is an action brought by Ms. Powell against the Defendants for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et. seq.* ("**FDCPA**") and the Fair Credit Reporting Act, 15 U.S.C. 1681, *et. seq.* ("**FCRA**").

## JURISDICTION AND VENUE

2. Subject matter jurisdiction over Plaintiff's FDCPA and FCRA claims exists pursuant to 15 U.S.C. § 1692k(d) and, 15 U.S.C. § 1681p, as the FDCPA and FCRA are federal statues

3. The Defendant is subject to the provisions of the FDCPA and FCRA and is subject to the jurisdiction of this Court pursuant to Section 48.193, Florida Statutes.

4. Venue is proper in Middle District of Florida, pursuant to 28 U.S.C. §1391(b)(2), because the events giving rise to this cause of action occurred within this District.

**PARTIES**

5. Ms. Powell, formally known as Kateena Brooks, is a natural person residing in Land O' Lakes, Pasco County, Florida and is a "consumer" as defined by the FDCPA, 15 U.S.C. § 1692a(3).

6. **Ability** is a Pennsylvania limited liability company with a primary business address of **284 Main Street, Dupont, PA 18641**.

7. Ability is registered with the Florida Secretary of State as a Foreign Corporation, and its Florida registered agent is **Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301**.

8. Ability is registered with the Florida Office of Financial Regulation as a Consumer Collection Agency ("**CCA**") and holds CCA license number **CCA09902892**. **SEE PLAINTIFF'S EXHIBIT A.**

9. Ability is a debt collector within the meaning of 15 U.S.C. § 1692a(6) in that it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another entity.

**FACTUAL ALLEGATIONS**

10. Sometime in or around November 2017, Ms. Powell allegedly incurred a debt to Lettuce Lake Emergency Physicians, LLC ("**Lettuce Lake**") for emergency medical services in the amount of $829 (the "**debt**").

11. Lettuce Lake provides emergency medical services in Pasco County, Florida.

12. Ms. Powell required emergency medical treatment due to an injury which she suffered while one the clock, working at her job.

13. Thus, Ms. Powell disputes being personally liable for the debt since it related to treatment of an on-the-job injury and was covered under her employer's worker's compensation insurance.

14. Nonetheless, the debt arose from services which were for family, personal, or household purposes, specifically personal emergency medical treatment, and therefore meets the definition of "debt" pursuant to the FDCPA, 15 U.S.C. § 1692a(5) and Section 559.55(6), Florida Statutes.

15. Prior to September 23, 2019, Lettuce Lake sold, transferred, or otherwise assigned the debt to a third party debt collector and debt buyer, which was, upon information and belief, Pendrick Capital Partners, LLC ("Pendrick").

16. On or around September 23, 2019, Pendrick then placed the debt for collection with Ability, or otherwise assigned the debt to Ability for collection.

17. Sometime on or about February 9, 2020, Ability reported the debt to at least one nationwide consumer credit reporting agency ("**CRA**"), Equifax. **SEE PLAINTIFF'S EXHIBIT B.**

18. Ability reported that Ms. Powell was personally liable for the debt, that she was the only individual liable for the debt, the "date of first delinquency" ("DOFD") as March 1, 2018.

19. CRAs like Equifax instruct their furnishers of data, like Ability, to report the DOFD as the date the debt *first* became delinquent. The DOFD is a vitally-important piece of information since large, nationwide CRAs like Equifax use a data furnisher's reported DOFD to comply with and compute the running of the seven-year reporting period prescribed by the FCRA 15 U.S.C. § 1681c(a)(4).

20. If a debt collector "re-ages" a debt by falsely reporting the DOFD as more recent than it should report as, the consumer is harmed in several ways. The negative information will remain on the consumer's credit history longer than it otherwise would have, if reported correctly. Additionally, the consumer's credit scores are more adversely impacted, since almost all commercially-used credit scores heavily consider a collection's DOFD in their scoring computations – the more recent a consumer defaulted on paying a debt, the worse a credit risk that consumer tends to me, mathematically.

21. The false reporting of a DOFD is, in and of itself, sufficient to trigger liability under the FDCPA since it unfairly harms the consumer; see *Corine O'Dell vs. National Recovery Agency*, case 16-5211, U.S. District Court, E.D. Penn., March 6, 2018 (stating "When a trade line is improperly re-aged … there is a real risk that the individual will be harmed, in the form of a lower credit score.")

22. Lettuce Lake, like many emergency service providers, makes clear that payment is expected at the time services are rendered. Thus, even assuming, *arguendo*, Ms. Powell was personally liable for the debt, Ability should have reported the DOFD as November 2017, not March 2018.

23. In the previous 12 months, Ms. Powell disputed Ability's reporting of the debt to Equifax, stating that she didn't owe the debt and that it stemmed from an on-the-job injury covered by her employer's worker's compensation carrier.

24. Equifax sent Ability an Automated Consumer Dispute Verification ("**ACDV**") request and asked Ability to make a reasonable investigation into Ms. Powell's dispute.

25. Rather than make any meaningful investigation into Ms. Powell's dispute, Ability simply verified basic account information (e.g., name, address, date of birth, Social Security number) against the records supplied by Equifax.

26. Ability responded to the ACDV and stated that the information it was reporting was accurate and should continue to appear on Ms. Powell's credit report.

27. If a debt collector like Ability furnishes data to a CRA and decides to verify disputed information as accurate, "the question of whether the furnisher behaved reasonably will turn on whether the furnisher acquired sufficient evidence to support the conclusion that the information was true." *Hinkle v. Midland Credit Management, Inc.* (11th Cir.) 827 F.3d 1295 (2016)

28. The confirmation of basic personal information is highly unlikely to uncover erroneous reporting since Ms. Powell's dispute centered on the fact it was for medical treatment of an on-the-job injury for which she was not personally liable for.

29. Ability had no basis for concluding the debt Ms. Powell was supposedly personally liable for was actually owed by her and not her employer or her employer's insurance carrier; likewise, investigation procedures which simply compares

name/address/birthdate against CRA records would be virtually certain to fail in scenarios like Ms. Powell's.

30. Thus, Ability's investigation was not reasonable.

31. In February 2020, Ability re-reported its collection tradeline to Equifax, despite knowing the debt was not legally enforceable against Ms. Powell, as it was related to an on-the-job injury covered by worker's compensation.

32. While the FCRA generally preempts state law, such as the FCCPA, concerning collection attempts made *vis-à-vis* credit reporting, the FCRA at 1681h(e), exempts from this preemption, "false information furnished with malice or willful intent to injure such consumer."

33. "Malice can be established by evidence showing the defendant made a false statement 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Long v. Pendrick Capital Partners II, LLC*, Case No.: GJH-17-1955 (D. Md. Mar. 18, 2019) (quoting *New York Times v. Sullivan*, 376 U.S. 254, 279-80 (1964) ("A jury could conclude that (Defendant) acted with reckless disregard for the truth when it initially furnished data about the disputed Emcare debt to the CRAs and when it verified the debt more than once. Plaintiff put (Defendant) on notice that she was not responsible for the Emcare debt, yet (Defendant) reported the debt anyway."))

34. In the instant matter, Ability furnished data which was clearly and obviously incorrect to multiple CRAs, as even a cursory review of the information would have revealed that reporting two accounts was incorrect and contrary to Metro II standards,

ignoring the extremely high likelihood that some duplication had occurred based on the identical amounts of the debts to the same creditor.

35. Common law "has generally understood 'recklessness' in the civil liability sphere as conduct violating an objective standard: action entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Safeco Ins. Co. of America v. Burr,* 551 U.S. 47 (2007).

36. Around April 3, 2020, Pendrick reassigned the debt for collection to Harvard Collections Services, LLC ("**Harvard**"), an Illinois-based debt collector.

37. In May 2020, Harvard reported the debt to various CRAs, including Equifax. **SEE PLAINTIFF'S EXHIBIT C.**

38. Harvard correctly reported that the DOFD was November 25, 2017. **Id.**

39. Equifax requires its data furnishers, like Ability, to follow the best practices outlined in the *Credit Reporting Resource Guide*. A debt collector is specifically instructed to report an account status of "DA" (short for "delete account") when it is no longer involved in the collection of a debt. This reporting is required by the CRAs to eliminate the possibility two different debt collectors report a collection tradeline concerning the identical debt.

40. Ability failed to request deletion of its tradeline when the debt was recalled by Pendrick.

41. As a result of Ability's negligence, Ability's tradeline reported simultaneously with Harvard's tradeline, compounding the damage caused to Ms. Powell's

credit reports and scores, since the same bill related to the same on-the-job injury now appeared twice, under two different debt collector's tradelines.

42. Ability's reports to the CRAs were "communications" as defined by 15 U.S.C. § 1692a(2) and section 559.55(2), Florida Statutes.

43. Reporting a debt to a CRA is an attempt to collect the debt.

44. Ms. Powell has hired the aforementioned law firm to represent her in this matter and is obligated to pay its reasonable fees.

## COUNT I
## VIOLATIONS OF THE FDCPA- 15 U.S.C. § 1692, *et. seq.*

45. Ms. Powell adopts and incorporates paragraphs 1 – 44 as if fully stated herein.

46. The Defendant's conduct violated **15 U.S.C. § 1692e** in that Ability, used a false, deceptive, or misleading representation or means in connection with the collection of a debt by: 1) falsely reporting DOFD of the debt; and 2) continuing to report a duplicate tradeline to the CRAs, by reporting the debt to the CRAs after the debt had been reassigned to Havard and reported to the CRAs by Harvard, thereby making it appear that Ms. Powell was responsible for two debts instead of one.

47. The Defendant's conduct violated **15 U.S.C. § 1692e(10)** in that Ability, made a false representation to collect the debt by: 1) falsely reporting the DOFD of the debt and 2) continuing to report a duplicate tradeline to the CRAs, by reporting the debt to the CRAs after the debt had been reassigned to Harvard and reported to the CRAs by

Harvard, thereby making it appear that Ms. Powell was responsible for two debts instead of one.

48. The Defendants' conduct violated **15 U.S.C. § 1692f** in that Abiltiy used unfair or unconscionable means to attempt to collect a debt by: 1) falsely reporting the DOFD of the debt; and 2) continuing to report a duplicate tradeline to the CRAs, by reporting the debt to the CRAs after the debt had been reassigned to Harvard and reported to the CRAs by Harvard, which unfairly affected Ms. Powell's credit scores.

49. Ability's conduct violated **15 U.S.C. § 1692e(8)** in that Ability communicated credit information known to be false by: 1) falsely reporting the name of the DOFD of the debt; and 2) continuing to report a duplicate tradeline to the CRAs, by reporting the debt to the CRAs after the debt had been reassigned to Harvard, thereby making it appear that Ms. Powell was responsible for two debts instead of one.

50. DRS's conduct violated **15 U.S.C. § 1692e(2)(a)** in that Ability made false representations of the nature and character of a debt by: 1) falsely reporting the name of the DOFD of the debt; and 2) continuing to report a duplicate tradeline to the CRAs, by reporting the debt to the CRAs after the debt had been reassigned to Harvard and reported to the CRAs by Harvard, thereby making it appear that Ms. Powell was responsible for two debts instead of one.

51. The Defendant's conduct renders them liable for the above-stated violations the FDCPA.

**WHEREFORE,** Ms. Powell respectfully requests this Honorable Court enter judgment

against Ability for:

    a.    Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

    b.    Unspecified actual damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

    c.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3);

and,

    d.    Such other relief that this Court deems just and proper.

## COUNT II
## VIOLATIONS OF THE FCRA – 15 U.S.C. § 1681, *et. seq.*

52. Ms. Powell adopts and incorporates paragraphs 1 - 44 as if fully stated herein.

53. Ability violated **15 U.S.C. § 1681s-2(b)** when it failed to make a reasonable re-investigation into Ms. Powell's dispute, since any substantive re-investigation would have shown that its tradeline was a duplicate of the account already being reported with an active balance by Harvard.

54. Ability violated 15 U.S.C. § **1681s-2(b)** when it failed to update, modify, or delete its report after receiving notice of a dispute from a CRA when it should have known its tradeline was incorrect.

55. Upon information and belief, Ability routinely fails to meaningfully investigate consumer disputes.

56. Ability violations were willful and intentional, or exhibited a reckless disregard for the rights of a consumer, as evidenced by its reporting of obviously-flawed information and confirming it as accurate even after being notified of the specific error.

57. Ability is liable for the above-stated violations of the FCRA, and Ms. Powell is entitled to an award of statutory damages not to exceed $1,000 for each violation.

**WHEREFORE,** Ms. Powell respectfully requests this Honorable Court enter judgment against Ability and for her as follows:

a. The greater of statutory damages of $1,000 for each violation of the FCRA shown to have been committed by Ability or her actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A) or 15 U.S.C. § 1681o(a)(1);

b. Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681n(a)(3); and,

c. Such other relief that this Court deems just and proper.

### DEMAND FOR JURY TRIAL

Ms. Powell demands a trial by jury on all issues so triable

Respectfully submitted on October 19, 2020, by:

**SERAPH LEGAL, P. A.**

/s/ *Bridget L. Dow*
Bridget L. Dow
Florida Bar No.: 1022866
BDow@seraphlegal.com
/s/ *Thomas M. Bonan*
Thomas M. Bonan, Esq.
Florida Bar No.: 118103
tbonan@seraphlegal.com
2002 E. 5th Avenue, Suite 104
Tampa, FL 33605
Tel: 813-567-1230
Fax: 855-500-0705
Counsel for Plaintiff

**ATTACHED EXHIBIT LIST**
A	Ability's CCA License
B	Ms. Pow Equifax Consumer Disclosure May 25, 2020, Ability Excerpt
C	Ms. Pow Equifax Consumer Disclosure May 25, 2020, Harvard Excerpt